NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

CIVIL ACTION NO. 04-CV-224-HRW

KEVIN MEADOR                                                                                    PETITIONER

**MEMORANDUM OPINION AND ORDER**

TERRY O'BRIEN, WARDEN                                                              RESPONDENT

Kevin Meador, the *pro se* petitioner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He has paid the $5.00 filing fee. When the petitioner filed this proceeding on November 17, 2004, he was confined at the Federal Correctional Institution in Ashland, Kentucky ("FCI- Ashland").[1] The petitioner has not provided the Court with an updated address since he filed this proceeding.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous

---

[1] Actually, the petitioner stated that he was serving his sentence at the Prison Camp at FCI-Ashland [Petition, Record No. 1, p. 1].

or malicious, or (ii) fails to state a claim upon which relief can be granted.

## RESPONDENT

The named respondent is Charles E. Samuels, Warden of FCI-Manchester.

## CLAIMS

The petitioner claims that the respondent violated his due process rights under the Fifth Amendment of the United States Constitution. He alleges that the BOP wrongly construed 18 U.S.C. §§3621(b) and 3624(c) and denied him time to which he was entitled to spend in either a Community Corrections Center ("CCC") or in home confinement. The petitioner complains that the Bureau of Prisons ("BOP"), by delaying his release into a CCC until May 12, 2005, awarded him only 74 days in a CCC instead of a full six months. He alleges that the BOP's decision to deny him pre-release into a CCC until May 12, 2005, violated the Administrative Procedure Act and the Ex Post Facto Clause. He states that the date of his release from the CCC was to be August 27, 2005.

## ALLEGATIONS OF THE PETITION

The petitioner states in his "Motion for Leave to File An Amended §2255 Motion" [Record No. 5] that he was sentenced in the United States District Court for the Southern District Of West Virginia ("the trial court") on September 13, 2002.[2] The exhibits attached to the petition reflect that on February 3, 2003, the trial court sentenced the petitioner to a 41-month term of imprisonment.[3]

---

[2] The petitioner states that he began serving his sentence on August 7, 2002.

[3]

The Court derives this information from a document prepared by the BOP entitled "Sentence Monitoring Computation Data as of 11-12-04" ("SMCD"). The petitioner attached the SMCD as an attachment to his petition [Record No.1]. The SMCD reflects that the date of the petitioner's offense was August 7, 2002, and that he received jail credit toward his sentence for the periods of time between: (1) August 7, 2002, and August 12, 2002, and (2) September 13, 2002, through February 2, 2003. The SMDC further reflects that the BOP's projected release date for the petitioner was August 27, 2005.

The petitioner alleges that the BOP should have allowed him to serve the last six months of his sentence in a CCC on February 27, 2005, instead of being made to wait until May 12, 2005. The February 27, 2005 date would have been six months prior to his projected release date of August 27, 2005. The petitioner cites *Colton v. Ashcroft*, 299 F. Supp.2d 681 (E. D. Ky. 2004) (Hon. Jennifer B. Coffman presiding), and numerous cases from other jurisdictions in support of his claim that he should have received six months in pre-release custody, instead of only 74 days which the BOP awarded him. He alleges that the BOP had uniformly engaged in a practice whereby inmates were allowed only 60 days in a CCC, regardless of their actual "10%" date.

He alleges that his father had both legs amputated and has heart trouble, and that the BOP should have factored the needs of his parents into his (petitioner's transitional considerations). He argues that the denial of his request for release into a CCC in February, 2005, would cause him irreparable damage, and that he was entitled to emergency injunctive relief.

RELIEF REQUESTED

The petitioner sought an emergency injunctive order directing the respondent to place him in home confinement on February 27, 2005.

DISCUSSION
1. No Protected Liberty Interest in CCC
Placement or in Home Confinement

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c), the BOP uniformly designated federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences. This policy was known as the "Six Month Policy."

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's.

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule").

The petitioner has failed to state a claim upon which relief can be granted. First, state and federal prisoners generally enjoy no constitutional right to placement in a particular penal institution. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir.1983). Thus, the Attorney General has the power to direct the place of a prisoner's confinement and the authority "to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." *Brown-Bey*, 720 F.2d at 470.

Second, nothing in §3624 requires or mandates the BOP to place any federal prisoner in a CCC for the final 10% of his sentence.[4] The language merely authorizes the BOP to allow CCC

---

[4]

Title 18 U.S.C. §3624(c) states, in part, as follows:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and

4

placement "for a *reasonable part* . . . of the last ten percentum of the term." (Emphasis Added)

Third, the courts have rejected the claim that §3624(c) creates a protected due process liberty interest and have held that the statute does not encroach upon the BOP's broad discretion and authority to determine where prisoners may be confined during the prerelease period. *United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995); *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469-70 (10th Cir.1992), *cert. denied*, 510 U.S. 830 (1993); *see also United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society.").

While §3624 does employ mandatory language, it relates only to a general guideline to facilitate the prisoner's post-release adjustment through the establishment of some unspecified pre-release conditions. *Prows*, 981 F.2d at 469. Such interpretation is clearly consistent with the broad administrative discretion delegated to the BOP regarding the placement of prisoners. *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir.1983); *Ready v. Fleming*, 2002 WL 1610584, *3 (N. D. Tex. 2002) ("Thus, §3624(c) does not create a constitutionally protected liberty interest, and Ready's halfway-house-placement claim must fail.").

In *Gambino v. Gerlinski*, 96 F.Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), petitioner Gambino argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement). The *Gambino* court, citing and relying on *Prows*, concluded that §3624(c) does not create a liberty interest

---

prepare for the prisoner's re-entry into the community.

*Id*. {Emphasis Added}

because it "refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system." *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)). The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement was in violation of the Constitution or any federal law.

The Southern District of New York has also recently ruled that federal prisoners have no constitutionally protected right to a specific amount of time in CCC placement. *See Distefano v. Federal Bureau of Prisons*, 2004 WL 26999, *4 (S.D. N.Y. March 4, 2004), in which the court issued a writ of mandamus under 28 U.S.C. §1651 compelling the Warden of FCI-Otisville to act promptly and in good faith to *consider* Distefano for placement in a CCC consistent with the BOP's policy prior to December 2002. The court qualified that ruling, however, by stating as follows:

> "This 'ruling does not *require* the Bureau to grant petitioner's request for [CCC] designation, *but only to give that request full and fair consideration.*' *McCarthy* [*v. Doe* 146 F.3d 118, 122-23 (2d Cir. 1998)] . . . . Because Distefano would become eligible for CCC placement on March 13, 2004 under the prior policy, the BOP is directed to *consider* him for placement by that date."

*Distefano*, 2004 WL 396999, at *6 {Emphasis added}. *See also Knish v. Stine*, 347 F.Supp.2d 682, 688 (D. Minn. Nov. 24, 2004) (Knish was not entitled to CCC placement for any particular period of time; proper relief was not to direct Knish's transfer to a CCC, but was instead to direct the BOP to *consider* Knish's transfer to a CCC, using BOP's pre-December 2002, policy considerations).

To the extent the petitioner alleges that the BOP's decisions relating to CCC placement and home confinement violate the Ex Post Facto Clause, that claim is also without merit. Laws, policies, and other actions violate the Ex Post Facto Clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). The Ex Post Facto clause is implicated where a law

6

punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31, (1981)).

The BOP's policy change in 2002 changed only the permissible length of CCC and/or in-home confinement, not a prisoner's eligibility for in-home confinement. As the petitioner has never been approved for in-home confinement, the length of his in-home confinement is not an issue. In addition, the OLC Memo was authored in December of 2002. As the respondent correctly noted, the issue of whether a federal inmate is a candidate for in-home confinement is left to the discretion of a CCM. According to the SMDC, the petitioner's earliest date of eligibility for CCC placement was February 27, 2005. Thus, the OLC Memo was not retroactively applied to the petitioner, who could not have been considered for in-home confinement by a CCM until February 27, 2005, which was over two years *after* the implementation of the OLC Memo.

Finally, the Court notes that the petitioner failed to establish that failure to obtain an earlier release date would subject him to irreparable injury. The petitioner received a relatively short sentence of 41 months. According to the SMDC, the petitioner's sentence was shortened to approximately 29 months after reduction for good time credits. Of that 29 months, the petitioner spent three-and-a-half months in a CCC.

Accordingly, the petitioner did not enjoy a constitutionally protected liberty interest in early release on a date certain into either a CCC or home confinement. The term of placement in a CCC is left strictly to the discretion of the BOP.

2. <u>Injunctive Relief Request Moot</u>

The petitioner did not supplement the record with an updated address at any time after he was to have been transferred to a CCC on May 12, 2005. The only information which the petitioner provided the Court about his transfer to a CCC was an exhibit which he attached to his "Motion to Amend" filed herein on December 7, 2005 [Record No. 5]. That exhibit consisted of an "Acceptance Letter" dated November 29, 2004, addressed to the petitioner from Bannum-Place of Charleston, which is a CCC located in Charleston, West Virginia. The letter confirmed that Bannum-Place of Charleston had agreed with CCM-James Morgan to accept the petitioner as a"GCT-REL" placement beginning on May 12, 2005.

The Court takes judicial notice of the fact that the Bureau of Prisons ("BOP") maintains an official website (www.bop.gov) which enables the public to track the location of federal inmates, by use of the "Inmate Locator" inquiry at the BOP's website. According to the "Inmate Locator," the instant petitioner was released from federal custody on August 26, 2005 [*See* BOP "Inmate Locator" Attachment to this Memorandum Opinion and Order] This information is consistent with the information provided on the SMDC, which stated that the petitioner's projected release date was to have been August 27, 2005.

It is unclear whether the petitioner was released from Bannum-Place of Charleston, a different CCC, or from FPC-Ashland. Regardless, it appears that the petitioner has in fact been transferred out of federal custody. Thus, his request for injunctive relief must be denied as moot.

The law is clear that an inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate-plaintiff's release from confinement, or transfer to another facility. *McAlpine v. Thompson*, 187 F.3d 1213,1215 (10th Cir. 1999); *Green v. Branson*, 108 F.3d 1296 (10th Cir. 1997); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims

for injunctive relief became moot after he was transferred to another facility); *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir. 1987) (prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred.); *McKinnon v. Talladega County, Alabama*, 745 F.2d 1360, 1362 (11th Cir. 1984) (Inmates' transfer or release from jail mooted claims for declaratory and injunctive relief); *Booth v. Barton County*, 157 F. Supp. 2d 1178, 1183 (D. Kan. 2001) (Two plaintiffs' release from jail mooted their claims for injunctive relief).

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) This action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the respondent.

(2) The petitioner's "Emergency Motion for Preliminary Injunction and Motion for Temporary Restraining Order" [Record No. 2] is **DENIED** as **MOOT**.

(3) The petitioner's "Motion for Leave to File an Amended 28 U.S.C. §2241 Motion Pursuant to FRCP 15(a)" is **DENIED** as **MOOT**.

This August 31, 2005.

Signed By:
Henry R Wilhoit Jr.
United States District Judge